No. 24-3768 / 24-3818

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | |
|---|---|
| OPAWL – Building AAPI Feminist Leadership, Northeast Ohio Coalition for the Homeless, Elisa Bredendiek, Peter Quilligan, and John Gerrath,<br><br>   Appellees/Cross-Appellants,<br><br> v.<br><br>Dave Yost, in his official capacity as Ohio Attorney General, and Frank LaRose, in his official capacity as Ohio Secretary of State,<br><br>   Appellants/Cross-Appellees. | On Appeal from the<br>United States District Court<br>for the Southern District of Ohio<br><br>*District Court Case No. 24-3495* |

## REPLY BRIEF OF APPELLEES/CROSS-APPELLANTS
## (FOURTH BRIEF)

| | |
|---|---|
| Elisabeth C. Frost<br>Melinda K. Johnson<br>ELIAS LAW GROUP LLP<br>250 Massachusetts Ave NW, Suite 400<br>Washington, DC 20001<br>Telephone: 202-968-4490<br>efrost@elias.law<br>mjohnson@elias.law | C. Benjamin Cooper<br>Kaela King<br>COOPER ELLIOTT<br>305 West Nationwide Blvd<br>Columbus, OH 43215<br>Telephone: 614-481-6000<br>benc@cooperelliott.com<br>kaelak@cooperelliott.com |

*Counsel for Appellees/Cross-Appellants*
OPAWL – Building AAPI Feminist Leadership, Northeast Ohio Coalition for the
Homeless, Elisa Bredendiek, Peter Quilligan, and John Gerrath

# TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................ ii

**INTRODUCTION** ..................................................................................1

**SUMMARY OF THE ARGUMENT** .....................................................1

**ARGUMENT** ..........................................................................................5

    I.     The Court should reach the issues raised in Plaintiffs' cross-appeal. ........5

    II.    Section 121's ballot-issue advocacy restrictions violate the First Amendment. ................................................................................6

    III.   Section 121 is void for vagueness. ...........................................16

    IV.   Section 121 is unconstitutionally overbroad. ..........................23

**CONCLUSION** .....................................................................................25

**CERTIFICATE OF COMPLIANCE** ..................................................26

**CERTIFICATE OF SERVICE** ...........................................................27

**DESIGNATION OF DISTRICT COURT RECORD** .........................28

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*303 Creative LLC v. Elenis*,
  6 F.4th 1160 (10th Cir. 2021)............................................................................. 18

*Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*,
  591 U.S. 430 (2020) ........................................................................................7

*Bannister v. Knox Cnty. Bd. of Educ.*,
  49 F.4th 1000 (6th Cir. 2022).......................................................................... 16

*Bluman v. FEC*,
  800 F. Supp. 2d 281 (D.D.C. 2011) ...........................................................1, 3, 15

*Boone Cnty. Republican Party Exec. Comm. v. Wallace*,
  116 F.4th 586 (6th Cir. 2024)....................................................................18, 22

*Brown v. Ent. Merchs. Ass'n*,
  564 U.S. 786 (2011) ........................................................................................4

*Brown v. Yost*,
  122 F.4th 597 (6th Cir. 2024)......................................................................... 11

*Buckley v. Valeo*,
  424 U.S. 1 (1976) ............................................................................................2

*Cent. Me. Power Co. v. Me. Comm'n on Governmental Ethics & Election Pracs.*,
  No. 23-cv-00450, 2024 WL 866367 (D. Me. Feb. 29, 2024) ...........................9

*Chicago v. Morales*,
  527 U.S. 41 (1999) ........................................................................................ 16

*Citizens Against Rent Control/Coal. For Fair Hous. v. City of Berkeley*,
  454 U.S. 290 (1981) ........................................................................................2

*Citizens United v. FEC*,
558 U.S. 310 (2010) .......................................................2, 4, 8, 9, 12, 13, 22, 23

*Dambrot v. Cent. Mich. Univ.*,
55 F.3d 1177 (6th Cir. 1995).......................................................................... 18

*Eubanks v. Wilkinson*,
937 F.2d 1118 (6th Cir. 1991).......................................................................... 15

*FCC v. Fox Television Stations, Inc.*,
567 U.S. 239 (2012) ....................................................................................... 21

*FEC v. Mass. Citizens for Life, Inc.*,
479 U.S. 238 (1986) ....................................................................................... 22

*FEC v. Wis. Right To Life, Inc.*,
551 U.S. 449 (2007) ................................................................................... 3, 14

*First Nat'l Bank of Bos. v. Bellotti*,
435 U.S. 765 (1978) ..............................................................2, 7, 10, 13, 14

*Giaccio v. Pennsylvania*,
382 U.S. 399 (1966) ....................................................................................... 16

*Hill v. Colorado*,
530 U.S. 703 (2000) ................................................................................... 4, 17

*Ind. Right to Life Victory Fund v. Morales*,
66 F.4th 625 (7th Cir. 2023)............................................................................ 22

*Johnson v. United States*,
576 U.S. 591 (2015) ....................................................................................... 16

*Jones v. Caruso*,
569 F.3d 258 (6th Cir. 2009)............................................................................. 6

*Kolender v. Lawson*,
461 U.S. 352 (1983) .............................................................................4, 16, 17

*Lamont v. Postmaster Gen. of U.S.*,
381 U.S. 301 (1965) ....................................................................................... 10

*McCutcheon v. FEC*,
    572 U.S. 185 (2014) ...................................................................12, 13

*Miller v. City of Cincinnati*,
    622 F.3d 524 (6th Cir. 2010).......................................................5

*Minn. Chamber of Com. v. Choi*,
    707 F. Supp. 3d 846 (D. Minn. 2023) ............................................ 10

*NAACP v. Button*,
    371 U.S. 415 (1963) ...................................................................4

*OPAWL v. Yost*,
    118 F.4th 770 (6th Cir. 2024)....................................................... 12

*Thomas v. Chi. Park Dist.*,
    534 U.S. 316 (2002) .................................................................. 20

*TikTok, Inc. v. Garland*,
    604 U.S. ----, 145 S.Ct. 57 (2025)............................................10, 11

*United States v. Hansen*,
    599 U.S. 762 ( 2023) ................................................................ 24

*United States v. Williams*,
    553 U.S. 285 (2008) ...........................................................5, 23, 24

*Virginia v. Am. Booksellers Ass'n, Inc.*,
    484 U.S. 383 (1998) ...............................................................18, 22

*Virginia v. Hicks*,
    539 U.S. 113 (2003) .................................................................. 23

*Vt. Right to Life Comm., Inc. v. Sorrell*,
    221 F.3d 376 (2d Cir. 2000)........................................................ 18

*Williams-Yulee v. Florida Bar*,
    575 U.S. 433 (2015) .................................................................. 12

*Williamson v. Recovery Ltd. P'ship*,
    731 F.3d 608 (6th Cir. 2013)....................................................... 16

*Wyo. Gun Owners v. Gray*,
    83 F.4th 1224 (10th Cir. 2023) ........................................................................ 22

**STATUTES**

Ky. Rev. Stat. § 121.120 ........................................................................ 18

Mich. Comp. Laws Ann. § 37.2602 ........................................................................ 18

Mo. Rev. Stat. § 105.957 ........................................................................ 19

Mo. Rev. Stat. § 3517.13 ........................................................................24, 25

O.R.C. § 3517.01 ........................................................................ 15

O.R.C. § 3517.13 ........................................................................ 4, 24

O.R.C. § 3517.121 ........................................................................ 3, 7, 10, 17, 20, 22

O.R.C. § 3519.01 ........................................................................ 21

**OTHER AUTHORITIES**

Charles Alan Wright & Arthur A. Miller, 15A FED. PRAC. & PROC. JURIS., §
    3904 (3d ed. 2024) ........................................................................5

**INTRODUCTION**

Plaintiffs challenge Ohio's unprecedented and sweeping restrictions on multiple different grounds. If the Court affirms the district court based on §121's violation of LPRs' First Amendment rights or on equal protection grounds, and if it agrees that the injunction was proper in scope, it need not consider Plaintiffs' arguments raised in the cross-appeal. But this Court cannot reverse without considering whether Plaintiffs are likely to succeed on their separate claims that (1) §121's restrictions on ballot-issue spending violate the First Amendment, (2) crucial portions of §121's text—including its broad and arbitrary enforcement provision—are void for vagueness, and (3) §121 is unconstitutionally overbroad. Each provides independent grounds for a preliminary injunction.

**SUMMARY OF THE ARGUMENT**

If the Court finds that the district court erred in issuing the injunction below, it must consider Plaintiffs' other challenges that were rejected or not reached in light of that injunction. Plaintiffs are likely to succeed on each of these grounds.

I. Section 121's restrictions on ballot-issue advocacy violate the First Amendment. The district court acknowledged this was "a close question," PI Order, R.32, PageID#1174, but ultimately found Plaintiffs unlikely to succeed based on its reading of *Bluman v. FEC*, 800 F. Supp. 2d 281, 291–92 (D.D.C. 2011), *aff'd*, 565 U.S. 1104 (2012), including its conclusion that, if §121's restrictions on issue

advocacy were construed to reach only "express advocacy," the law would likely be constitutional. PI Order, R.32, PageID#1177.

That decision deeply misunderstood *Bluman* and is at odds with decades of Supreme Court precedent, including *Buckley v. Valeo*, 424 U.S. 1 (1976), *First National Bank of Boston v. Bellotti*, 435 U.S. 765, 790 n.29 (1978), *Citizens Against Rent Control/Coalition For Fair Housing v. City of Berkeley*, 454 U.S. 290, 299 (1981), and *Citizens United v. FEC*, 558 U.S. 310 (2010). Ohio largely ignores that precedent—and the plain text of §121—arguing that states may pass laws restricting the speech of foreign governments or wholly foreign entities. But that is not the question before this Court because it is not the law Ohio passed. Section 121 broadly criminalizes ballot-issue advocacy by *any* noncitizen, including those present in the U.S., and through the spending of domestic entities like Plaintiffs OPAWL and NEOCH, whose members or donors include noncitizens. Supreme Court precedent requires the conclusion that this law cannot survive under the First Amendment.

Ohio also fails to engage with—much less defend—the majority of the district court's legal analysis. The sole exception is the court's conclusion that it could "narrowly tailor" §121's restrictions on ballot-issue advocacy to apply only to "express advocacy," as then-Judge Kavanaugh did in *Bluman*. PI Order, R.32, PageID#1177. But that construction was not only beyond the court's powers in this case—it is illogical. "Express advocacy" is a term of art that draws a hard line

between advocacy that supports or opposes a candidate—which can be constitutionally restricted—and *issue advocacy*—which cannot. *See Bluman*, 800 F. Supp. 2d at 284 (stating that, because court was drawing "[t]he line between prohibited express-advocacy expenditures and permitted issue-advocacy expenditures" previously drawn by the Supreme Court, it construed the law before it to "not bar foreign nationals from issue advocacy—that is, speech that does not expressly advocate the election or defeat of a specific candidate"); *FEC v. Wis. Right To Life, Inc.* ("*WRTL*"), 551 U.S. 449, 456–57 (2007) (recognizing a "genuine issue a[d]" can never be express advocacy or its functional equivalent, because express advocacy is "speech expressly advocating the election or defeat of a candidate for federal office").

Section 121 restricts speech made "in support of or opposition to a statewide ballot issue or question." O.R.C. §3517.121(B)(2). **This is always issue advocacy.** Thus, the "express advocacy" construction that federal courts have applied to federal laws involving candidate-related spending—which save them from invalidation precisely *because* the construction *protects against those laws being used to chill or restrict* **issue advocacy**—cannot do the same work here. But the district court only concluded that Plaintiffs were unlikely to succeed on their First Amendment challenge to §121's ballot-advocacy restrictions based on this construction. PI Order, R.32, PageID#1177. That decision was clearly erroneous and should be reversed.

II. Section 121 is also infirm because it not only authorizes but *encourages* arbitrary and discriminatory enforcement and fails to provide sufficient clarity as to what it prohibits. *Hill v. Colorado*, 530 U.S. 703, 732 (2000). Because §121 is a criminal statute that targets speech, it is subject to a more stringent vagueness test, lest it threaten to chill core protected activity. *See, e.g.*, *Brown v. Ent. Merchs. Ass'n*, 564 U.S. 786, 793 (2011); *NAACP v. Button*, 371 U.S. 415, 433 (1963).

Nearly all of the arguments that Ohio makes regarding Plaintiffs' vagueness claims were not raised below and are forfeited. They are also wrong. Ohio's assertion that §121's enforcement clause is "irrelevant" to the question of whether the law authorizes or invites arbitrary enforcement is nonsensical—the most important aspect of the vagueness test focuses specifically on this question. *Kolender v. Lawson*, 461 U.S. 352, 357 (1983). And Ohio's attempts to argue that other provisions are clear either contradict the legislature's view of the same language or only invite more uncertainty.

III. Section 121 is also unconstitutionally overbroad because, like the restrictions the Supreme Court found unacceptable in *Citizens United*, §121 is not limited to corporations or associations created in foreign counties or operated predominately by foreign shareholders. 558 U.S. at 362. In fact, §121 goes even further, reaching more protected speech than the law in *Citizens United* would have. Moreover, all of §121's legitimate applications are already prohibited by O.R.C.

§3517.13(W), which is not challenged. Thus, §121 lacks *any* "legitimate sweep." *United States v. Williams*, 553 U.S. 285, 292 (2008). Ohio's contrary arguments are unsupported by precedent.

## ARGUMENT

Likelihood of success on any one of the claims in Plaintiffs' cross-appeal would require an injunction to protect them from irreparable harm. *See, e.g.*, *Miller v. City of Cincinnati*, 622 F.3d 524, 540 (6th Cir. 2010). Plaintiffs are likely to succeed on all of them.[1]

## I.    The Court should reach the issues raised in Plaintiffs' cross-appeal.

Ohio argues that the Court should leave consideration of whether Plaintiffs are likely to succeed on these claims "in the first instance" to the district court. *See* Appellants/Cross-Appellees' Reply & Resp. Br. ("3d Br.") 26, Dkt. 51. But the district court considered whether Plaintiffs were likely to succeed on their claim that §121's restrictions on ballot-issue advocacy violate the First Amendment, as well as whether §121 is overbroad. *See* PI Order, R.32, PageID#1174–77, PageID#1180. It

---

[1] Ohio characterizes these arguments as ones "to affirm on alternate grounds," 3d Br.24, but while each was presented below and is properly before the Court, they would not necessarily lead to the exact same injunction. *See* Charles Alan Wright & Arthur A. Miller, 15A Fed. Prac. & Proc. Juris., § 3904 (3d ed. 2024) ("Special Limits on Jurisdiction—Separate Appeal Requirements"). They are thus distinguishable from Plaintiffs' equal protection argument, which would require the same injunction of §121's definition of individual foreign national. *See* Appellees/Cross-Appellants' Br. ("2d Br.") 42–44, Dkt. 45.

did not reach the question of whether §121 is unconstitutionally vague, but this Court has recognized that it should consider a plaintiff's alternative legal arguments in exactly this situation: where the question is whether the lower court abused its discretion in issuing a preliminary injunction and the alternative claims are purely legal and have been briefed by the parties. *See Jones v. Caruso*, 569 F.3d 258, 269–70 (6th Cir. 2009) (collecting cases). Indeed, in *Jones*, this Court applied that principle both to the question of whether the plaintiff was likely to succeed on his First Amendment claim after the Court corrected an underlying legal error and to his alternative void-for-vagueness claim. *See id*. at 276 ("[T]he fact that Jones has argued the void-for-vagueness issue as a separate basis on which this Court could uphold the injunction makes it appropriate to consider in our evaluation of Jones's likelihood of success on the merits.").

## II.    Section 121's ballot-issue advocacy restrictions violate the First Amendment.

Although it recognized that the question of whether §121's restrictions on ballot-issue advocacy presented a "close question," the district court ultimately concluded Plaintiffs were not likely to succeed on this claim. PI Order, R.32, PageID#1174–77. This was clear error, and the Court should reverse.

Ohio's cursory legal argument is completely untethered to the question of whether the district court erred in concluding that the restrictions imposed on ballot-issue advocacy in §121 likely survive First Amendment scrutiny. Indeed, it is

untethered to §121 itself. Ohio admits that, under Supreme Court precedent, "issue campaigns trigger the peak 'need for the widest possible dissemination of information from diverse and antagonistic sources,'" 3d Br.27 (quoting *Belotti*, 435 U.S. at 790 n.29), but then asserts that "that hardly means that state or federal law could not restrict *foreign governments* from *unlimited* spending on issue campaigns." *Id*. (emphases added); *see also id*. at 28 (citing to case finding "*foreign organizations operating abroad* … possess no rights under the First Amendment") (emphasis added).

The Court, of course, must consider the law that Ohio enacted, and §121 is not limited to speech by foreign governments or foreign organizations operating entirely abroad. It prohibits *all* noncitizens—regardless of immigration status, residency, physical presence, or connections to the U.S.—from engaging in *any* type or level of spending "in support of or opposition to a statewide ballot issue or question," "directly or indirectly," from direct contributions to entirely independent expenditures. O.R.C. §3517.121(B)(2).[2]

---

[2] Moreover, §121 does not—and could not—deem domestic organizations like OPAWL "foreign national" entities. The inclusion of domestic entities in its restrictions can only be understood as a "'prophylaxis-upon-prophylaxis' approach . . . which the Supreme Court has consistently greeted with a strong 'measure of skepticism.'" OEA Br.31 (citing cases). *Agency for International Development v. Alliance for Open Society International, Inc*., cited by Ohio, 3d Br.28, only underscores how differently entirely foreign entities may be treated under the First Amendment, even compared to domestic entities with extensive foreign affiliations.

Ohio's argument that the First Amendment countenances broad speech restrictions on any and all "foreign" speakers to ensure they have no "influence" on what policies the people choose to enact at the ballot box, *see* 3d Br.27, is without basis. In support, Ohio purports to quote the Court in *Citizens United*, saying that "it explicitly 'assumed … a compelling interest in limiting foreign influence over our political process.'" *Id*. But Ohio distorts the quotation, omitting a key word in the ellipses and ignoring the rest of the paragraph. It reads:

> **We need not reach the question whether the Government has a compelling interest in preventing foreign individuals or associations from influencing our Nation's political process**…. **Section 441b is not limited to corporations or associations that were created in foreign countries or funded predominately by foreign shareholders.** *Section 441b therefore would be overbroad even if we assumed,* **_arguendo_**, *that the Government has a compelling interest in limiting foreign influence over our political process.*

*Citizens United*, 558 U.S. at 362 (emphases added) (citation omitted). Thus, far from supporting Ohio's position, this passage requires the conclusion that §121 is unconstitutionally overbroad, *even assuming* the compelling interest that Ohio argues justifies it. *See also infra* at 23–25 (discussing overbreadth issues).[3] *Citizens*

_____

591 U.S. 430, 433-36 (2020) (reaffirming decision holding First Amendment violated by Congress' restrictions on funding to domestic organizations for work abroad unless they explicitly parroted U.S. foreign policy, but declining to expand to entirely foreign affiliates incorporated in other countries that remained legally distinct from the domestic organizations).

[3] Ohio also assumes far more: that, by "foreign individuals or associations," the Court meant any noncitizens and domestic organizations that associate with

*United* also rejects the idea that, "in the context of political speech, the Government may impose restrictions on certain disfavored speakers." 558 U.S. at 341. As the Court explained, in doing so:

> [T]he Government deprives the disadvantaged person or class of the right to use speech to strive to establish worth, standing, and respect for the speaker's voice. The Government may not by these means deprive the public of the right and privilege to determine for itself what speech and speakers are worthy of consideration. The First Amendment protects speech and speaker, and the ideas that flow from each.

*Id*. at 340–41. This is precisely what §121 does: it strips from all noncitizens—including those who will be personally impacted by policies enacted via ballot measure—the right to use speech to contribute their voices to the public debate. And it denies Ohio's citizens their right to hear those positions and decide for themselves whether to consider them.[4]

Consistent with this precedent, courts have repeatedly declined to find that a speaker's mere citizenship or immigration status—or, for domestic organizations, their associations—can justify restrictions on their right to engage in speech, or on the people's right to hear that speech. *See, e.g.*, *Cent. Me. Power Co. v. Me. Comm'n*

---

noncitizens (contrary to the quoted language above), and that by "influencing our Nation's political processes," it meant to reach speech advocating for or against a specific policy that the people vote on, and not simply influence over elected officials that could cause them to take positions adverse to the interests of the people who elected them (contrary to decades of precedent, *see supra* at 2).

[4] For the reasons amicus explains, OEA Br.27–29, the stay majority's conclusion that *Citizens United* requires §121's speaker-based discrimination is also flatly wrong.

*on Governmental Ethics & Election Pracs.*, No. 23-cv-00450, 2024 WL 866367 (D. Me. Feb. 29, 2024); *Minn. Chamber of Com. v. Choi*, 707 F. Supp. 3d 846 (D. Minn. 2023); *Lamont v. Postmaster Gen. of U.S.*, 381 U.S. 301, 306–07 (1965). Ohio's bald assertion that "speaker identity matters even more" in the context of "issue campaigns," 3d Br.27, has it exactly backwards and evidences the "highly paternalistic" view offered to justify "restrict[ions on] what the people may hear" that the First Amendment prohibits. *Belotti*, 435 U.S. at 790 nn.29, 31.

Ohio's reliance on *TikTok, Inc. v. Garland*, 604 U.S. ----, 145 S.Ct. 57 (2025), for the proposition that a "content-neutral speaker-based restriction does not demand strict scrutiny," 3d Br.27, is also misplaced. ***Section 121 is content-based on its face.*** Ohio's revisionist assertion that the law "targets the source of money, not the message that money might support," 3d Br.9, ignores §121's plain text. Section 121 doesn't criminalize all spending by any foreign national in any context: it targets spending for speech made "*in support of or opposition to a statewide ballot issue or question.*" O.R.C. §3517.121(B)(2) (emphasis added); *see also TikTok*, 145 S.Ct. at 67 (content-based laws include laws that "on [their] face … appl[y] to particular speech because of the topic discussed or the idea or message expressed") (citations omitted). And the Supreme Court's careful consideration of whether the law at issue in *TikTok* was content-based and how it impacted expressive activity only underscores that there is no blanket rule that allows the government to restrict speech

in general whenever some "foreign" component is involved—or that automatically takes such restrictions outside of strict scrutiny review.[5]

Ohio next falls back on its analogies to the "political function" cases, but the extremely circumscribed exception recognized in those cases only lowers the standard of review for equal protection claims based on citizenship classifications where an individual is actually *exercising* a specific governmental *function* (*e.g.*, through certain public employment or jury duty). *See* 2d Br.32–33; PI Order, R.32, PageID#1166–68. Those cases are not about speech that could *influence* those performing those functions, nor is there a corresponding political function exception to the First Amendment. The difference is important. *Cf. Brown v. Yost*, 122 F.4th 597, 614 (6th Cir. 2024) (Thapar, J., concurring) (noting states have broad freedom in structuring and limiting the initiative *process*, but "face First Amendment constraints when they directly regulate *speech within*" that process) (emphasis added).

---

[5] The Court ultimately applied intermediate scrutiny, but it stressed that the situation was unique: the law was not concerned with content regulation, but regulation of a corporate structure of a corporation controlled by a foreign adversary where Congress determined that the adversary's divesture from the company was necessary to address "well-supported national security concerns." *TikTok*, 145 S. Ct. at 72; *see also id*. at 68–69 ("While we find that differential treatment was justified here, [] we emphasize the inherent narrowness of our holding. . . . A law targeting any other speaker would by necessity entail a distinct inquiry and separate considerations.").

Ohio's "public confidence" argument, 3d Br.28–29, is not only speculative, it ignores that the Supreme Court has effectively rejected it, holding that "[t]he appearance of influence or access [] will not cause the electorate to lose faith in our democracy." *Citizens United*, 558 U.S. at 360; *see also McCutcheon v. FEC*, 572 U.S. 185, 207–08 (2014) (holding "[s]pending large sums of money in connection with elections, but not in connection with an effort to control the exercise of an officeholder's official duties" is not a basis to restrict such spending); 2d Br.53 (making this point). Once again, Ohio misconstrues *Williams-Yulee v. Florida Bar*, 575 U.S. 433 (2015), which considered a narrow prohibition on direct solicitation from a judicial candidate to a donor and stressed the unique nature of judicial elections. *Id*. at 439, 446–47. Ohio also emphasizes that ballot-measure elections can be consequential for the treatment of contested policy issues, *see* 3d Br.29, but this is exactly the point: noncitizens who may be impacted should not be barred from participating in the public debates that inform those elections—even if they cannot vote in them. *See, e.g.*, *Citizens United*, 558 U.S. at 342–43.

Ohio criticizes Plaintiffs for putting "unwarranted stock in the distinction between candidate spending and issue spending," but then parrots the stay majority's unsupportable conclusion that broadly restricting ballot-issue advocacy is permissible because it is "*even more connected to the democratic process than advocacy for or against a candidate*," 3d Br.27 (quoting *OPAWL v. Yost*, 118 F.4th

770, 778 (6th Cir. 2024)) (emphasis added). There is no support for the idea that a greater "connectivity" to the "democratic process" makes a restriction on core political speech more—*and not less*—justifiable. This perverts the most basic First Amendment principles undergirding the Supreme Court's political speech precedent, which allows for limited restrictions on *candidate*-related political spending (more as to direct contributions, far less for independent expenditures, *see, e.g.*, *Citizens United*, 558 U.S. at 356–61), because of specific concerns about *quid pro quo* between donors and candidates. *See, e.g.*, *McCutcheon*, 572 U.S. at 192, 199 (finding "Government may not seek to limit the appearance of mere influence or access," "the hallmark of corruption is … dollars for political favors" (quotation omitted)).

In contrast, **issue spending is simply more speech**. There is no risk it will facilitate separate backroom deals on policy. The only "influence" that Plaintiffs' spending can have is to persuade voters to support or oppose the specific policy that they are voting on as written in the ballot measure. But the Supreme Court has been clear: "the fact that advocacy may persuade the electorate is hardly a reason to suppress it." *Bellotti*, 435 U.S. at 790. The district court acknowledged that this was a "forceful" argument, and that "the risk of foreign influence may be at its *lowest* in the ballot initiative context." PI Order, R.32, PageID#1175 (emphasis added). Nevertheless, it concluded that, because similar arguments could be made about

13

independent expenditures to support or oppose candidates, §121's ballot-issue advocacy restrictions were likely constitutional *if* narrowly construed in the same way that *Bluman* construed federal independent expenditure restrictions in candidate elections—that is, to restrict only "express advocacy." *Id.* at PageID#1176–77.[6]

This was error, not only because federal courts cannot rewrite state laws, but also because it misunderstands the "express advocacy" construction. The term has a very specific meaning in campaign finance jurisprudence: it refers *only* to "speech expressly advocating the election or defeat *of a candidate for federal office*," and was created specifically to draw a hard line between that type of speech and "*issue advocacy*." *WRTL*, 551 U.S. at 456 (emphases added).[7] Thus, by definition, a communication that urges a position on an *issue* cannot be "express advocacy." Then-Judge Kavanaugh was clearly applying the construction in *exactly* this way in *Bluman* when he wrote that the court did not interpret the law at issue in that case to "bar foreign nationals from issue advocacy—that is, speech that does not expressly

---

[6] Missing from Ohio's response is any defense of the district court's reliance on *Bluman* as it relates to the key question of whether it can constitutionally regulate ballot-issue spending. *But see* PI Order, R.32, PageID#1172–77; 2d Br.49–56.

[7] The Court has been so strict about this line that it refused to find that the government may permissibly regulate advertisements that expressly mention a candidate in the thirty days before an election, if the overarching message is asking the candidate to take a position on an issue, rather than asking voters to vote for or against them. *See id.* at 458. This is yet another reason why the district court's speculation that ballot-issue advocacy could also "buy 'influence over or access to' elected officials," PI Order, R.32, PageID#1176 (quoting *Bellotti*, 435 U.S. at 788 n.26), cannot justify §121's restrictions.

advocate the election or defeat of a specific candidate," because he was drawing the same "line between prohibited express-advocacy expenditures and permitted issue-advocacy expenditures . . . *drawn by the Supreme Court in [WRTL]*." 800 F. Supp. 2d at 284 (emphasis added). Thus, the district court was wrong to conclude that it could save §121's restrictions—all of which relate to *issue advocacy*—by construing it in the same way *Bluman* construed the federal candidate-spending restrictions.[8]

Finally, Ohio acknowledges that Plaintiffs are "certainly right that a federal court may not read state law to mean" something other than what is "'obvious' in the text," 3d Br.29, but it never explains how the district court's construction can be reconciled with §121's broad text. Moreover, the term "express advocacy" was known to the Ohio legislature—indeed, other provisions of the code use it. O.R.C. §3517.01(A)(23). Yet those words appear *nowhere* in §121. Thus, in addition to the other problems with the district court's approach, it also violated "the general federal rule [] that courts do not rewrite statutes to create constitutionality." *Eubanks v. Wilkinson*, 937 F.2d 1118, 1122 (6th Cir. 1991).[9]

---

[8] Ohio runs headlong into this contradiction when describing what the district court did. *See* 3d Br.29 (stating the district court "construed the Ohio law to reach only express, *not issue advocacy*") (emphasis added). This is nonsensical. All ballot issue advocacy is "issue" advocacy.

[9] It is also worth noting Ohio has never actually endorsed the district court's construction, much less made any assurances that Plaintiffs will not be investigated or even prosecuted in accordance with §121's broad text.

### III.    Section 121 is void for vagueness.

Plaintiffs also argued that §121 is unconstitutionally vague in several crucial ways. 2d Br.57–60. The district court did not need to reach these arguments due to the remedy it entered, but the parties have briefed them extensively, and the Court can and should find Plaintiffs are likely to succeed on this claim. *See supra* at 5–6.

Ohio first notes it "doubts" that the long history of federal precedent invalidating statutes on void-for-vagueness grounds is constitutional. *See* 3d Br.30. Because it did not raise this argument below, it is forfeited. *See, e.g.*, *Bannister v. Knox Cnty. Bd. of Educ.*, 49 F.4th 1000, 1011 (6th Cir. 2022). Even now, it does not seriously support it. *See Williamson v. Recovery Ltd. P'ship*, 731 F.3d 608, 621 (6th Cir. 2013) ("Issues adverted to in a perfunctory manner, without some effort to develop an argument, are deemed forfeited.") (citation omitted). For good reason: it is contrary to long-standing Supreme Court precedent. *See, e.g.*, *Giaccio v. Pennsylvania*, 382 U.S. 399, 402–403 (1966); *Kolender*, 461 U.S. at 357; *Chicago v. Morales*, 527 U.S. 41, 56–57 (1999); *Johnson v. United States*, 576 U.S. 591, 595 (2015). This Court is bound by that precedent.

Next, Ohio asserts—without any support—that §121's enforcement provision is "irrelevant" to the question of vagueness. 3d Br.25, 30. Ohio also did not raise this argument below, and the argument is also without merit. Most fundamentally, it cannot be reconciled with the well-established vagueness test, which considers if a

statute (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits," *or* (2) "*authorizes or even encourages arbitrary and discriminatory enforcement*." *Hill*, 530 U.S. at 732 (emphasis added). Ohio does not even try to explain how an enforcement provision could be "irrelevant" to a test that focuses on how a statute's text is likely to be enforced.

Indeed, the Supreme Court has emphasized that the most important aspect of the vagueness doctrine is the question of whether a law creates a significant danger that it may allow for "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilections." *Kolender*, 461 U.S. at 357–58 (quotation omitted). Section 121 elevates this risk to a near-certainty, *requiring* the Attorney General to investigate *any purported violation* alleged by the Governor, Secretary, or an elector, without any safeguards whatsoever. O.R.C. §3517.121(G). Section 121 does not even require that the complainant affirm their allegations, that they meet any minimum standard of proof, or that their allegations are even *plausible*, before triggering a mandatory investigation.

Ohio has never disputed Plaintiffs' interpretation of §121's enforcement provision. It does not do so now. Instead, it attempts to persuade this Court to focus myopically on the fact that §121 allows for citizens' complaints. *See* 3d Br.30–31. But as Plaintiffs have reiterated, it is the citizen complaint feature *together* with §121's unique mandate requiring the Attorney General to investigate all such

17

complaints that invites arbitrary and discriminatory enforcement; there are *no* guardrails to protect against investigations triggered by complaints filed simply to punish political opponents based on their speech. *See id.*; 2d Br.58–59. As a result, by §121's plain terms, investigations may be triggered entirely by the subjective view of third parties—a classic feature of an unconstitutionally void law. *See, e.g.*, *Dambrot v. Cent. Mich. Univ.*, 55 F.3d 1177, 1184 (6th Cir. 1995). Moreover, the mere threat of criminal investigation is a constitutional injury, when—as here—it chills speech. *See, e.g.*, *Virginia v. Am. Booksellers Ass'n, Inc.*, 484 U.S. 383, 393 (1998) (emphasizing the "danger … is, in large measure, one of self-censorship; a harm that can be realized even without an actual prosecution"); *Vt. Right to Life Comm., Inc. v. Sorrell*, 221 F.3d 376, 382 (2d Cir. 2000) (similar).[10]

None of the laws (real or imagined) that Ohio offers to pretend that §121's sweeping invitation to arbitrary enforcement is acceptable or commonplace are remotely similar. Mich. Comp. Laws Ann. §37.2602 and *303 Creative LLC v. Elenis*, 6 F.4th 1160, 1174 (10th Cir. 2021), *rev'd*, 600 U.S. 570, (2023), both discuss mechanisms that allow individuals to report if their own civil rights have been

---

[10] This Court's concern that a citizen-suit provision in a Kentucky law could be used to report political opponents with an intent to frustrate speech was significant enough that it issued an injunction pending appeal to guard against that harm in *Boone County Republican Party Executive Committee v. Wallace*, 116 F.4th 586, 595–96 (6th Cir. 2024), just last year. That law had more guardrails than §121: it at least required that the complaint be "sworn." *Id.* at 590 (citing Ky. Rev. Stat. § 121.120(1)).

18

violated, making them clearly distinguishable on those grounds alone. Moreover, neither Michigan's statute nor the reporting system discussed in *303 Creative* suggests that investigations of such complaints are *mandatory*, unlike in §121. Mo. Rev. Stat. §105.957 allows for complaints about certain campaign disclosures, but it lays out in detail what these complaints must contain, the rights of the accused to review the complaint, and how investigations should be handled—§121 does none of that. As for Ohio's made-up law about speed limit violation complaints, it should be plain that such complaints would not implicate speech rights. Nor is there any law that *requires* the police to investigate every citizen complaint about a speeding car. Indeed, such a law would be absurd.

Ohio's attempt to defend other provisions in §121 also falls short. For example, Ohio asserts that, when §121 says that it prohibits contributions to continuing associations unless protected by law or the Constitution, it "plainly means that the law operates unless displaced by a higher law," *see* 3d Br.31. But the bill's chief sponsor indicated that the concern was instead that there was "some residual question as to the General Assembly's power to regulate this aspect of a continuing association's activities" *at all*. Ex. L, R.16-7, PageID#885 (statement of Rep. Seitz); *see also id.* at PageID#860–62. What that question was, he did not say. And if the legislature did not know how this language would operate in practice because of this uncertainty—and Ohio argues it is *certain* that the language means something else

entirely—the people cannot be expected to know how to avoid whatever this language prohibits.

Ohio's argument that similar language has been used in other laws is directly undermined by the example it cites—which provides far more clarity than §121 and did not put individuals or organizations at risk of criminal investigation. In *Thomas v. Chicago Park District*, 534 U.S. 316, 318 n.1 (2002), the ordinance read, "[t]o the extent permitted by law, the Park District may deny an application for permit if . . . ," before enumerating specific grounds for permit denial. Obviously statutory language that directs government employees to monitor developments in the law that are directly relevant to their jobs to ensure the government acts in accordance with law, is materially different than requiring civilians to intuit what §121 means and then monitor subsequent legal developments to properly understand the scope of their potential liability, or else risk criminal sanctions for their core political speech.

Next, Ohio claims that §121's prohibition on political spending "in support of or opposition to a statewide ballot issue or question, *regardless of whether the ballot issue or question has yet been certified to appear on the ballot*," O.R.C. §3517.121(B)(2) (emphasis added), actually means that its criminal provisions are not triggered *until* "some citizens take official steps toward putting an issue on the ballot," which Ohio says occurs at "the earliest" when an issue campaign submits a petition to the Attorney General. *See* 3d Br.31. This argument is unavailing for

several reasons. First, *none* of that language is in §121. When a law implicates speech, the Supreme Court has been clear that courts need to hew faithfully to the actual statutory language in determining whether it is vague. *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012). It is therefore telling that Ohio cannot defend §121's temporally limitless trigger without reading into it limits that are not there, or referring to other sections of the Code that are not referenced in §121.

Moreover, it is far from clear that the trigger would be an issue campaign submitting a petition to the Attorney General, as Ohio says. The statute that Ohio cites states that a petition can only be submitted after its proponents successfully collect the signatures of at least 1,000 qualified electors in support. *See* O.R.C. §3519.01(A).[11] If the concern driving §121 is about "influencing" voters to support or oppose a petition, it is not clear why the law would only be triggered after these first 1,000 (or more) voters may have already been influenced. And even Ohio hedges its reading, stating that this would be the "earliest" point at which §121's restrictions would apply. But what does that mean? Are there situations in which they could be triggered later? And how is an individual or organization that wants to engage in issue advocacy to know? Perhaps even more importantly, nothing keeps

---

[11] Nor can §3519.01 be fairly read to specify when something becomes a "ballot issue" under §121. The provision never uses the term "ballot issue" at all, referring instead to "petitions" and "measures," and nowhere does it mark a moment in time when an issue of public interest and discussion passes the invisible threshold to officially become a "ballot issue."

Ohio from adopting another theory of when the law is triggered tomorrow. *But see Wyo. Gun Owners v. Gray*, 83 F.4th 1224, 1238 (10th Cir. 2023) (finding law unconstitutionally vague where state could "pick and choose" multiple theories of interpretation).

Lastly, Ohio simply declares—without any support—that §121 will not reach statements like "I will support your work," 3d Br.25, even though on its face it prohibits *any* "promise, either expressly or implicitly," to engage in any of the conduct that the law prohibits. O.R.C. §3517.121(B)(5). Ohio has never explained what this language *would* reach, and its failure to do so here only underscores that the parameters of what is permissible and what is not are and remain hopelessly vague. In addition, the Supreme Court has recognized that such assertions are not sufficient to save statutes even when they *would* resolve the question as to what a vague provision means, because they are not binding on other actors, including Defendants' successors in office. *See, e.g.*, *Am. Booksellers Ass'n*, 484 U.S. at 395; *Ind. Right to Life Victory Fund v. Morales*, 66 F.4th 625, 631 (7th Cir. 2023).[12]

---

[12] Amicus OEA also underscored §121's vagueness as to its retroactive application and the injuries OEA would suffer in attempting to go back and segregate existing treasury funds, including the risk that OEA would miss the "short timeframes in which speech can have influence." *Citizens United*, 558 U.S. at 334. Ohio's response that there are structural ways organizations could navigate the law, *see* 3d Br.33–34, "do[] not alleviate the First Amendment problems," because they are "burdensome alternatives" that "are expensive to administer and subject to extensive regulations." *Citizens United*, 558 U.S. at 337; *see also Wyo. Gun Owner*s, 83 F.4th at 1238

**IV.    Section 121 is unconstitutionally overbroad.**

Section 121 is sweeping in its scope, regulating the speech of not only noncitizens, but also unions and domestic nonprofits. The district court recognized as much, noting that §121 "is overbroad insofar as it sweeps in LPRs *and those who receive money from them*." PI Order, R.32, PageID#1188 (emphasis added). This is just one way in which §121 is even more broad than restrictions the Court found unacceptable in *Citizens United*, where the law was not limited to corporations or associations created in foreign counties or operated predominately by foreign shareholders. 558 U.S. at 362; *see also supra* at 8. It plainly cannot survive.

Section 121's "overbreadth" is "substantial, not only in an absolute sense, but also relative to the statute's [] legitimate sweep," *Williams*, 553 U.S. at 292. In response, Ohio claims that the Supreme Court has recognized that the sweep of a law includes redundant criminal prohibitions, citing *Virginia v. Hicks*, 539 U.S. 113, 123 (2003), for support. Ohio never raised this argument below, so it is forfeited.

---

(finding law vague including because "the statute does not direct advocacy groups to set up accounts any differently and does not provide guardrails to help the government determine which donors should have been reported for the dollars spent"). Ohio is also wrong to characterize the actions at issue in *Citizens United, FEC v. Mass. Citizens for Life, Inc.*, 479 U.S. 238, 263–64 (1986), and *Boone*, 116 F.4th at 598, as "far more drastic" than the disclaimers and accounting requirements that Ohio itself argues organizations could adopt to comply with §121. 3d Br.34. As in these cases, "political speech must prevail against laws that would suppress it, whether by design or inadvertence" via the ambiguous language. *See Citizens United*, 558 U.S. at 340.

*See supra* at 16. It is also wrong. The law at issue in *Hicks* was related to trespassing, and in analyzing the overbreadth claim, the Court gave examples of groups of people that could be constitutionally prevented from trespassing who were not engaged in speech, including drug dealers, bird watchers, loiterers, and soccer players. *Id*. Ohio suggests that because drug dealers were prohibited from dealing drugs in a separate law, they were part of the sweep of the trespassing law the Court considered, and therefore the sweep of §121 can include activities already criminalized in O.R.C. §3517.13(W). But these two contexts are different. In *Hicks*, a separate criminal law prevented individuals from engaging in separate criminal activity—dealing drugs— but not from trespassing, so drug dealers were properly considered within the sweep of those whom the new trespassing law would affect.

And in *United States v. Hansen*, the law at issue reached non-expressive solicitation of immigration law violations, and the Court ultimately declined to "throw out too much of the good based on a speculative shot at the bad." 599 U.S. 762, 784–85 (2023). The bad is not speculative here, and any potential good in §121 will remain even if §121 is enjoined because §3517.13(W) separately bans the exact same candidate and political party spending by non-LPRs. These redundant portions of §121 are not properly considered part of its legitimate sweep because any injunction would have no practical effect on these activities. And §121's actual

sweep—expanding §3517.13(W)'s restrictions to include ballot issues and LPRs—
is plainly overbroad.

## CONCLUSION

Should the Court decline to affirm the district court's preliminary injunction
order as entered, it should find that Plaintiffs are likely to succeed on the
constitutional claims addressed in their cross-appeal and remand with instructions.

Date: March 18, 2025

C. Benjamin Cooper
Kaela King
COOPER ELLIOTT
305 West Nationwide Blvd
Columbus, OH 43215
Telephone: 614-481-6000
benc@cooperelliott.com
kaelak@cooperelliott.com

Respectfully submitted,

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost
Melinda K. Johnson
ELIAS LAW GROUP LLP
250 Massachusetts Ave NW, Suite 400
Washington, DC 20001
Telephone: 202-968-4490
efrost@elias.law
mjohnson@elias.law

*Counsel for Appellees/Cross-Appellants*

# CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this motion complies with the type-volume requirements and contains 6,327 words. *See* Fed. R. App. P. 28.1(e)(2)(B).

I further certify that this motion complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point font.

Respectfully submitted,

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost

## CERTIFICATE OF SERVICE

I hereby certify that on March 18, 2025, I electronically filed the above document with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

Respectfully submitted,

*/s/ Elisabeth C. Frost*
Elisabeth C. Frost

# DESIGNATION OF DISTRICT COURT RECORD

Plaintiff-Appellees/Cross-Appellants, pursuant to Sixth Circuit Rule 30(g), designate the following filings from the district court's electronic records:

### *OPAWL v. Yost*, Case No. 2:24-cv-3495 (S.D. Ohio)

| R. No. | Date Filed | Document Description | PageID# |
|---|---|---|---|
| 1 | 06/27/2024 | Complaint | 1–47 |
| 16 | 06/28/2024 | Plaintiffs' Motion for Prelim. Injunction | 77–100 |
| 16-1 | 06/28/2024 | Declaration of Jona Hilario | 101–07 |
| 16-2 | 06/28/2024 | Declaration of Chris Knestrick | 108–14 |
| 16-3 | 06/28/2024 | Declaration of John Gerrath | 115–20 |
| 16-4 | 06/28/2024 | Declaration of Elisa Bredendiek | 121–25 |
| 16-5 | 06/28/2024 | Declaration of Peter Quilligan | 126–29 |
| 16-6 | 06/28/2024 | Declaration of Sarah Imran | 130–35 |
| 16-7 | 06/28/2024 | Declaration of Jyoti Jasrasaria | 136–1014 |
| 29 | 07/26/2024 | Defendants' Opposition to Motion for Prelim. Injunction | 1056–78 |
| 31 | 08/09/2024 | Plaintiffs' Reply in Support of Motion for Prelim. Injunction | 1115–38 |
| 32 | 08/31/2024 | Opinion and Order on Motion for Prelim. Injunction | 1139–91 |
| 33 | 09/02/2024 | Defendants' Notice of Appeal | 1192–93 |
| 34 | 09/02/2024 | Defendants' Motion for Stay | 1194–1204 |
| 35 | 09/05/2024 | Plaintiffs' Opposition to Motion to Stay | 1205–25 |
| 37 | 09/06/2024 | Defendants' Reply in Support of Motion to Stay | 1229–41 |
| 40 | 09/12/2024 | Opinion and Order on Stay Motion | 1256–78 |
| 42 | 09/13/2024 | Plaintiffs' Notice of Appeal | 1284–86 |